UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA J. MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4067 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

Before the Court are a motion by Plaintiff Pamela J. Morris (hereinafter "Morris") for summary reversal [Doc. #9] and a motion by Defendant Commissioner of Social Security (hereinafter "Commissioner") for summary affirmance [Doc. #12] of a final decision of the Commissioner which denied disability and supplemental security income benefits to Morris.  For the reasons set forth below, Morris' motion for summary reversal is DENIED, and the Commissioner's motion to affirm is GRANTED.

### PROCEDURAL BACKGROUND

Morris, then 38 years old, first filed an application for disability insurance benefits and supplemental security income on April 9, 2003, alleging a disability onset date of December 26, 2002, due to a seizure disorder, asthma, and depression.  Her application was denied initially and upon reconsideration by the Social Security Administration, and by the Administrative Law Judge ("ALJ") after a hearing during which Morris was represented by counsel.  Morris' appeal of the ALJ's decision to the Appeals Council was unsuccessful leaving the ALJ's decision as the final agency action.  Morris then brought the instant action for judicial

review of the Commissioner's action in denying her application.

At the time of the hearing on October 28, 2004, the ALJ found that Morris had the following impairments: seizure disorder, asthma, and depression.

In denying Morris' application, the ALJ determined that she was not "disabled" as defined by the Social Security Act, as amended. The ALJ found that her impairments when considered singly and in combination, although severe, did not medically meet or equal any of those listed in Appendix 1, Subpart P, Regulation No. 4 (the Listing of Impairments). Her mental impairments, deemed to correspond with section 12.04 of the Listing of Impairments (Affective Disorders), were found to have produced "mild restriction of her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and she has experienced no episodes of decompensation." The effects of her mental impairment did not establish "sufficient limitations to satisfy the "C" criteria." The ALJ found that Morris retained the residual functional capacity ("RFC") to perform the exertional and non-exertional requirements of work, with the following limitations:

> occasionally lift 50 pounds and frequently lift 25 pounds, sit a total of six hours in an eight hour day, stand/walk a total of six hours in an eight hour day, occasionally climb stairs with a hand rail, occasionally climb a ladder, kneel, stoop and crawl. The claimant should avoid unprotected heights, fast and/or dangerous machinery, should not operate a motor vehicle and should avoid poor ventilation and exposure to gases and smoke. (20 C.F.R. 404.1545 and 416.945).

Upon comparing Morris' residual functional capacity assessment with the physical and mental demands of her past relevant work, the ALJ found that she was able to perform her past relevant work as a daycare worker, teachers' aide, hostess, or cashier. The ALJ

consequently determined that Morris was not under a "disability" as defined in the Social Security Act at any time through the date of her decision. (20 C.F.R. §§ 404.1520(a) (4)(iv) and 416.920(a)(4)(iv).

The issue before the Court is not whether the ALJ was correct in her decision but whether or not there is substantial evidence in the record to support the Commissioner's decision that Morris was not "disabled" and had not established entitlement to disability benefits.

## **APPLICABLE LAW**

In order to be entitled to disability benefits under the Social Security Act, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. §§ 494.1566, 416.966 (1986).

The establishment of disability under the Social Security Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42. U.S.C. § 1382(c)(a)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step sequential test. See 20 C.F.R. §§ 404.1520, 416.920.

The five-step sequential test is examined by the ALJ in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the

3

plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921; (3) does the impairment meet or equal one of the list of specified impairments?  (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is disabled.  Garfield v. Schwerkis, 732 F.2d 605 (7th Cir. 1984).

At step 3, if an applicant's impairment(s) does not meet or equal a listed impairment, the ALJ is required to assess and make a finding about an applicant's RFC based on all the relevant medical and other evidence in the record.  The RFC is then used at the fourth sequential step to determine if an applicant can do her past relevant work.  20 C.F.R. § 404.1520(e).  The plaintiff has the burden of production and persuasion on steps 1 through 4.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the commissioner to show ability to engage in some other type of substantial gainful employment.  Tom v Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence.  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings

are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Credibility determination made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564 (1985).

In this case, the Commissioner decided that Morris was not entitled to benefits because she was not "disabled" as defined in the Social Security Act, as amended.

In context of the five-step sequential evaluation process, the ALJ found in favor of Morris at steps 1 and 2. At step 3, the ALJ found that, based upon the medical facts alone, her impairments were severe but neither individually or in combination did they reach the level of severity contemplated in the Listings. Her mental impairments limited somewhat her activities of daily living, maintaining social functioning, and caused difficulties in maintaining concentration, persistence, or pace, but her limitations were insufficient to satisfy the "C" criteria. The ALJ found against Morris at step 4 finding that she could perform her past relevant work. In doing so, the ALJ found that Morris retained the RFC to perform the exertional and non-exertional requirements of work with some limitations in lifting, standing/walking, sitting, but that she could occasionally climb stairs with a hand rail, occasionally climb a ladder, kneel, stoop and crawl; however, she should avoid unprotected heights, fast and/or dangerous machinery, should not operate a motor vehicle and should avoid poor ventilation and exposure to gases and smoke. After comparing Morris' RFC assessment with the physical and mental demands of her past relevant work, the ALJ determined that she

could perform her past relevant work as a daycare worker, teacher's aide, hostess or cashier. In making this finding under the five-step sequential evaluation process, the ALJ was required to find that Morris was not disabled, resulting in the denial of her application for disability benefits. 20 C.F.R. § 404.1520 (e).

## DISCUSSION

Morris challenges the finding of the ALJ at step 3 that she did not have an impairment or combination of impairments listed in or medically equal to one listed in the Listings of Impairments. She argues that her impairment or combination of impairments meets the listing for the neurological impairments of "**Epilepsy - convulsive epilepsy** (grand mal or psychomotor)" and "**Epilepsy - nonconvulsive epilepsy** (petit mal, psychomotor, or focal)." 20 C.F.R. Part 404 Subpart P., App. 1 §§ 11.02 and 11.03. The listings for these two seizure disorders are described as follows:

> **Sect. 11.02  Epilepsy – convulsive epilepsy**, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:
>     A.   Daytime episodes (loss of consciousness and convulsive seizures); or
>     B.   Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> **Sect. 11.03 Epilepsy – nonconvulsive epilepsy** (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness of loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

The Social Security Administration has developed Rulings which describe and analyze certain aspects of the statute and regulations on disability. In SSR 87-6, the ruling analyzes seizure disorder

claims and states in part:

> To make the listing criteria, major motor seizures must be occurring more frequently than once a month (Listing 11.02), or minor motor seizures must occur more frequently than once weekly (Listing 11.03), in spite of at least 3 months of prescribed treatment. Adequate documentation as to cooperation with prescribed treatment is vital to the assessment of impairment severity of seizure disorders. The evidence must reflect the current treatment regimen and information about any recent changes in drug dosage. An allowance on the basis of meeting listing level severity is warranted only when the individual is following a treatment regimen prescribed by his or her treating source and continues to have seizures at the specified frequency.

Morris argues that the record shows that she has sustained daytime episodes of seizure activity of a grand mal variety more than once weekly for at least 3 months despite prescribed treatment. She admits that there have been periods of time when she has been noncompliant with medication but that was due to a lack of finances; however, for the past several years, she has been compliant with the recommendations of her physicians regarding medication and her seizures have continued.

Morris' self-described history of seizures was corroborated by the hearing testimony of her husband and by statements in the record of her husband, mother, father, daughter, and a friend (Exhs. 5E, 5E/2, 5E/3, 7E, 7E/2, 7E/3) all to the effect that during 2003, they each witnessed Morris having a seizure involving loss of consciousness and convulsions on one or more occasions; and that she experienced seizures on a frequency of greater than once per week. The record also contained a statement of Morris' counsel, Dean L. Sutton, that he witnessed her having a grand mal seizure in his law office several days prior to the October 28, 2004 hearing. The ALJ's evaluation of this aspect of the record is reflected in the following quote from his decision:

>The allegations and hearing testimony regarding the intensity and severity of symptoms are not fully credible for the reasons outlined in the body of this decision. Self statements by the claimant are inconsistent with the evidence as a whole. Third party statements (Exhibit 5E) are less than fully credible. The testimony of Keith Morris is less than fully credible. This case has been carefully considered in accordance with 20 C.F.R. 404.1529 and 416.929, as amended, SSR 96-7p (effective July 1996) and the standards agreed upon in the settlement reached in the case of Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984).

With respect to the medical evidence in the record, the ALJ found that it established one of Morris' impairments was seizure disorder but it did not singly or in combination with her other impairments, asthma and depression, meet or equal any impairment listed in the List of Impairments. Neither section 11.02 or 11.03 listings for epilepsy was mentioned by the ALJ as the template for making this determination. However, in summarizing the medical evidence in the record beginning with the emergency room treatment of Morris in August 2002 for a reported seizure (Exh. 1F) including a period of treatment by Dr. Kumar, a neurologist beginning in March 2003 (Exhs. 5F, 7F), and ending with the consultative neuropsychological examination by Dr. Monica Kurylo, Ph.D. of OSF St. Francis Medical Center on November 19, 2004 (Exh. 13F, Tr. 282-288), it is obvious that the ALJ did not find any persuasive evidence in the medical record to substantiate Morris reported history of epileptic seizures. In her memorandum of law in support of her motion, Morris focuses on the findings and opinions of Dr. Kurylo (who apparently is a Ph.D. psychologist and not a medical doctor), who stated in her report (Exh. 13F, Tr. 283-288) that Morris "was referred to the neuropsychology service by Dr. Ergene in the OSF epilepsy clinic for neuropsychological testing to assess memory and other cognitive functions and assess for possible

organicity versus primary affective disorder." Dr. Kurylo's report is remarkable for the comprehensive history she obtained from Morris and family members and "available medical records" concerning episodes of seizures and related medical treatment. Various psychometric tests were administered, and Dr. Kurylo's impressions and recommendations were as follows.

> IMPRESSIONS: The neuropsychological evaluation revealed relatively intact verbal and visual reasoning, visual memory, bilateral gross motor strength, work reading ability, general work knowledge, and verbal problem solving.  In addition, abstract visual construction was low average, as were sequencing and social reasoning.  In contrast, the patient's performance was variable on auditory attentional tasks and visual motor speed tasks. Impairments were noted in oral and written math, speed of thought, naming, ability to provide her self with structure, verbal memory, memory for academic information, bilateral manual dexterity exercises, and overall intellectual functioning.  The patient reported a moderate level of depressed mood symptoms currently.
>
> RECOMMENDATIONS:
> 1.   It does appear that the patient is demonstrating some cognitive impairments, suggesting that it would be difficult for her to return to work at this time.  She is at significant risk with regard to driving and should not be driving currently.   In addition, given memory difficulties and cognitive difficulties overall, she would benefit from supervision of her activities at home. She may benefit from written in addition to orally-presented information to assist her recall, as well as reminders.  She may benefit from cognitive remediation through speech therapy services.  This is left to the discretion of this patient's physician.
> 2.   A repeat neuropsychological evaluation does not appear necessary currently.  The etiology of these memory difficulties is difficult to determine at this time.  It certainly is possible that the patient is experiencing nonepileptic seizures secondary to the triggers identified by her family members.  The patient and her family also described a significant amount of psychosocial stress currently, which may be contributing to the seizure-like activity.  The extent to which mood versus the seizure-like activity is contributing to her cognitive difficulties is uncertain at this time and would be difficult to determine.
> 3.   The patient reported that she is receiving counseling currently.  She did report a moderate level of

>   depressed mood symptoms.  She also reported a desire to
>   do more things outside of her house.  However, as she has
>   been seen by Dr. Ergene and myself, as well as in testing
>   with the psychometrist, she appears significantly
>   lethargic and therefore it would likely be very difficult
>   for her to be able to participate in any activities
>   outside her home.
>   4.   The patient and her family will be returning for
>   feedback regarding these tests on 11-22-2004, at which
>   time they will receive a copy of this report for their
>   records.

Morris argues that the ALJ erred in discounting the findings and opinions of Dr. Kurylo by noting that "after a cursory one paragraph description of her five-page report . . . , the Administrative Law Judge simply found that 'a cognitive disorder' is not supported by the medical evidence of record, which obviously makes [Kurylo's] report less than persuasive." (Tr. p.16). Morris points out that as a specialist in neuropsy-chology, Dr. Kurylo's opinion should carry great weight in this case, and there is no evidence in the record that contradicts her findings and opinions, citing to 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p which requires that controlling weight be given to the opinion of treating and examining physicians.

Morris mistakes the law.  Only the opinion of a treating source can be accorded "controlling weight," and only if that opinion is well supported by medically acceptable clinical and laboratory diagnosis technique and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.9127(d)(2); See also Social Security Ruling (SSR 96-2p, 61 Fed. Reg. 34490 (1996)).  A  *treating source* is generally a person's own physician who has or is providing medical treatment and who has an "ongoing treatment relationship" with the person.  20 C.F.R. §§ 404.1502, 416.902.  Dr. Kurylo was not a treating source, but rather a one-time consultative source;

therefore, contrary to Morris' argument, Dr. Kurylo's findings and opinions were not entitled to controlling weight, nor was the ALJ obligated to give good reasons for rejecting her opinions. However, as noted *supra*, the ALJ did not simply discount Dr. Kurylo's report without explanation; he explained that Dr. Kurylo's diagnosis of a cognitive disorder (Tr. 287) was less persuasive because it was not supported by the other medical evidence in the record such as the findings and impressions of Morris' treating physicians, Drs. Raman, Anseeuw, and Kumar, none of whom made any mention of any such mental condition during their treatment of Morris.  Additionally the various laboratory diagnostic testing examinations performed on Morris, such as EEG, MRI, and CT scans were all normal and did not reveal any such mental impairment.

In the Court's view, Morris' focus on Dr. Kurylo's diagnosis of a "cognitive disorder" does not address the ALJ's failure to find that her impairments of seizure disorder, asthma, and depression either singly or in combination met or equaled the section 11.02 or 11.03 listing for "epilepsy" which is the basis of Morris' appeal of the ALJ's decision.  There is no support in Dr. Kurylo's report for such finding and in that respect, the ALJ was justified in discounting Dr. Kurylo's findings and opinions for solely that reason.  However, it appears that the ALJ did give some consideration to Dr. Kurylo's opinions by using as a mental impairment template to assess Morris' mental impairment section 12.04 of the List of Impairments describing "Affective Disorders" which is one of the two differential diagnoses Dr. Kurylo was asked to assess in the referral from Dr. Ergene.  There is substantial support in the record to support the ALJ's finding that Morris' mental impairment did not merit or equal that listing.  In any event, there is no other medical evidence in the record to support

11

Morris' claim that she has epilepsy seizures.

Every doctor who has evaluated her has specifically concluded that her seizures do not result from epilepsy. (Tr. 154, 192, 194, 202, 218, 240). Dr. Lester Kelty saw her for complaint of seizure activity and concluded she was suffering from "acute anxiety." (Tr. 154). Dr. Ramesh Kumar Raman first saw Morris for complaint of seizure activity on August 22, 2002. According to his report, Morris gave a history in which she stated that she had "long standing history of seizures," however, the doctor commented he found no record of any seizures in her chart. Dr. Raman found a seizure disorder questionable and arranged for a repeat EEG. (Tr. 192). Dr. Ramesh Kumar Raman again saw Morris for complaint of seizure activity on September 24, 2002, and found that her EEG findings did not show "any focal epileptiform EEG activity," and she had a normal EEG. (Tr. 194). On February 24, 2003, Morris was seen by Dr. Brian Anseeuw as a follow up to an earlier EEG and MRI which had been normal. He could not find any basis in these tests to show that epilepsy was the cause of Morris' seizure activity. (Tr. 202).

In a report dated August 4, 2003, Dr. Ramesh Kumar Raman who had followed up an earlier visit by Morris regarding possible seizure disorder diagnosed her complaint of frequent seizures (one spell every three days) as "having seizures with non-epileptic seizures." (Tr. 218). As late as January 23, 2004, Morris' doctors were still unable to say that her seizures were epileptic based. It was Dr. Ramesh Kumar Raman's opinion that her seizures were "non-epileptic seizures." He went as far as to recommend the possibility of doing a "video EEG for further elucidation and separation between her seizures and non-epileptic seizures." (Tr. 240).

**CONCLUSION**

Where a listing such as sections 11.02 and 11.03 do not describe the medical findings needed to support a diagnosis, "the diagnosis [of the listed impairment] must still be established on the basis of medically acceptable clinical and laboratory diagnostic techniques" in order to apply the listing. See 20 C.F.R. §§ 404.1525(c), 416.925(e). In other words, to meet listing section 11.02 or 11.03, Morris must first establish that she actually suffers from epilepsy. As shown *infra*, virtually every doctor who evaluated Morris for seizure activity has either been skeptical or has concluded that her seizures do not result from epilepsy; and diagnostic tests such as EEG, CT, and MRI have been essentially normal as well as various neurological evaluations of Morris.

For the above reasons, the Court finds that there is substantial evidence in the record to support the decision of the Commissioner that Morris is not disabled and is not entitled to disability benefits. Morris' motion for summary reversal [Doc. #9] is DENIED, and the Commissioner's motion to affirm [Doc. #12] is GRANTED.

ENTERED this ___22nd___ day of January, 2007.

                                                       s/Joe Billy McDade
                                                         JOE BILLY McDADE
                                         United States District Judge